IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| MELISSA D. BULEY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 04-6133-JO |
| | ) | |
| v. | ) | <u>OPINION AND ORDER</u> |
| | ) | |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | ) ) | |
| | ) | |
| Defendant. | ) | |

    Drew L. Johnson
    Kathryn Tassinari
    1700 Valley River Drive, First Floor
    Eugene, OR  97401

     Attorneys for Plaintiff

    Craig J. Casey
    Assistant United States Attorney, District of Oregon
    UNITED STATES ATTORNEY'S OFFICE
    1000 S.W. Third Avenue, Suite 600
    Portland, OR  97204-2902

      David M. Blume
      Lucille G. Meis
      SOCIAL SECURITY ADMINISTRATION
      701 Fifth Avenue
      Suite 2900, M/S 901
      Seattle, WA  98104-7075

     Attorneys for Defendant

JONES, Judge:

Claimant Melissa Buley seeks judicial review of a final decision by the Commissioner of the Social Security Administration to deny her Supplemental Security Income disability benefits ("SSI"). This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Following a careful review of the record, I conclude that the Commissioner's decision is supported by substantial evidence, contains no errors of law, and must be affirmed.

## ADMINISTRATIVE HISTORY

Claimant applied for SSI benefits on June 25, 2002 alleging an inability to work since September 15, 2001 due to neck and shoulder conditions, headaches and depression. The application was denied initially and on reconsideration. Subsequently, claimant requested a hearing before an Administrative Law Judge (ALJ), which was held on October 16, 2003. Claimant, represented by counsel, appeared and testified at the hearing, as did a vocational expert.

On December 19, 2003, the ALJ issued a decision denying claimant's appeal for SSI benefits. This decision became the final decision of the Commissioner when the Appeals Council denied claimant's request for review on February 27, 2004.

## STANDARD OF REVIEW

I must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence on the record as a whole. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Tylitzki v. Shalala, 999 F.2d 1411, 1413 (9th Cir. 1993). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Tylizki, 999 F.2d at 1413. A reviewing court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld if it is a rational interpretation of the evidence, even if there are other possible rational interpretations. See Morgan v. Commissioner, 169 F.3d 595, 599 (9th Cir. 1999); see also Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).

## SUMMARY OF THE ALJ'S FINDINGS

The ALJ followed the five-step sequential analysis required by 20 C.F.R. § 404.1520(b)-(f) to determine claimant's disability status. The analysis is as follows:

> (I) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R.] § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in Appendix 1 of this subpart [Subpart P, Regulation No. 4] and meets the duration requirement, we will find that you are disabled.

> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.
>
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520(a)(4) (internal references omitted).

Applying this sequential analysis, the ALJ first found that claimant had not engaged in substantial gainful activity since the alleged disability onset date of September 15, 2001. Transcript (Tr.) 17.[1]

At the second step, the ALJ found that claimant's "history of cervical strain injury (September 2001), status post C5-6 and C6-7 cervical diskectomy and fusion (January 18, 2002)" causes severe impairment. Tr. 20. At the third step, the ALJ found that claimant's impairments were "not severe enough to meet or medically equal one of the impairments listed in [20 C.F.R.] Appendix 1, Subpart P, Regulations No. [40]4." Tr. 20-21.

At the fourth step, the ALJ determined whether the claimant could return to her past relevant work as "a bartender/cocktail waitress, motel housekeeper, mail sorter, and laborer" by establishing the claimant's residual functional capacity (RFC) and comparing it with the requirements of her past relevant work. Tr. 23.

To determine the claimant's RFC, the ALJ reviewed claimant's disability record and specifically looked to claimant's subjective complaints, vocational history, and treating physician

---

[1] "Transcript (Tr.)" refers to the official transcript of administrative record filed with the Commissioner's Answer (# 7).

Dr. Steven E. Koester's opinions. Claimant's "exaggeration of symptoms and inconsistencies between objective medical findings and subjective complaints" in the record led the ALJ to discount claimant's veracity. Tr. 21. Further, "she [claimant] has never demonstrated any significant motivation to work." Tr. 22. The ALJ included "certain but not all of his [Dr. Koester's] conclusions" in the RFC determination because those conclusions were based on (1) subjective complaints without objective evidence, (2) internally inconsistent physical limitations over a short period of time, and (3) Dr. Koester's speculation on claimant's vocational disability. Tr. 23. Thus, the ALJ found that claimant

> is able to lift 5 pounds frequently, and 20 pounds occasionally; she is able to sit up to 6 hours of an 8 hour day, and is able to stand or walk for up to 4 hours of an 8 hour day, but not continuously; she requires a sit/stand option; she is precluded from prolonged repetitive use of her arms or turning of the head; she is unable to climb ropes, ladders, or scaffolds, is not able to lift above shoulder level, and is unable to do balancing.

Tr. 23. Based on this RFC, the ALJ concluded that claimant could perform "a limited range of light and the inclusive sedentary level work."[2] The ALJ accepted the vocational expert's

---

[2] The term "light work" is a regulatory classification of a degree of workplace physical exertion. There are five degrees of exertion from "sedentary" to "very heavy;" "light work" requires the second least amount of physical exertion. The regulatory definition is that

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work,
(continued...)

testimony that claimant could not return to her past work based on a limited light or sedentary level of work. Therefore, based on the vocational expert's testimony, the ALJ concluded that claimant could not perform any of her past relevant work and found that claimant was disabled.

However, at the fifth step the ALJ found that the Commissioner met her burden of proof to show that "considering the claimant's younger age, educational background, work experience, and residual functional capacity, she is capable of making a successful adjustment to work that exists in significant numbers in the national economy." Tr. 24. The vocational expert testified that a significant number of jobs exist for a hypothetical person with limited light-work capacity and transferrable skills of "working with people, taking orders, and relaying information." Tr. 24. Based on this information and relevant Social Security guidelines, the ALJ concluded that claimant was not disabled under the Social Security Act.

## FACTS

At the time of her hearing before the ALJ, claimant was 31 years old and quit school in the eleventh grade. Claimant does not have a GED. She had worked as "a bartender/cocktail waitress, motel housekeeper, mail sorter, and laborer." Tr. 23.

I have reviewed the exhibits and I am satisfied that the ALJ's summary of the medical and other evidence is thorough. Consequently, I will not summarize the evidence except as necessary in the discussion below.

---

[2](...continued)
    unless there are additional limiting factors such as loss of fine
    dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

DISCUSSION

Claimant does not challenge steps one through three of the ALJ's sequential evaluation. She attacks the ALJ's decision at the fourth step to discredit the degree of claimant's subjective pain and, in part, the testimony of treating physician Dr. Koester in determining claimant's RFC. Claimant also asserts that the ALJ erred at the fifth step in excluding a mobility requirement in a worker hypothetical proposed to the vocational expert. I discuss each issue in turn.

I.  Step Four - Discrediting Aspects of the Claimant's and Dr. Koester's Testimony.

A.  Discrediting the extent of claimant's subjective pain.

The ALJ found that the "extent of [claimant's] functional restrictions are not fully credible" because "the record reflects indications of [claimant's] exaggeration of symptoms and inconsistencies between objective medical findings and subjective complaints." Tr. 21. Claimant argues that the ALJ did not provide clear and convincing reasons for discrediting her testimony on the extent of her pain.

Under Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986), a claimant who alleges disability based upon subjective symptoms "must produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged * * *." Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996) (citations and internal quotations omitted). If a claimant meets Cotton's threshold test, then the ALJ may reject the claimant's subjective symptom testimony "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003). As addressed above, the ALJ found that claimant's medical history demonstrated severe cervical impairment that could cause claimant pain to the upper cervical area and did not find

7 - OPINION AND ORDER

that the claimant was malingering. Thus, the ALJ must provide a reasonable basis for finding claimant not fully credible on the extent of her subjective pain.

In articulating "clear and convincing reasons, '[g]eneral findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)). Factors the ALJ must consider in assessing the credibility of a claimant in addition to the objective medical evidence are:

> 1. The individual's daily activities;
>
> 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
>
> 3. Factors that precipitate and aggravate the symptoms;
>
> 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
>
> 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
>
> 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>
> 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

Social Security Ruling ("SSR") 96-7p ("Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements"), 1996 WL 374186, *3. The ALJ is "required to state which symptom testimony [s]he found not credible with enough specificity to allow a reviewing court to confirm that the testimony was rejected on permissible grounds and not arbitrarily." Benton, 331 F.3d at 1041.

The ALJ found the degree of claimant's subjective pain suspect because of "give-way," i.e., exaggeration, during doctor examinations, secondary gain from a pending automobile accident and her SSI appeal, and inconsistencies between objective medical findings and subjective pain reporting.

Claimant asserts that no doctor ascribed exaggeration to claimant's subjective pain complaints and certain doctors viewed claimant's pain sufficiently credible for treatment, i.e., Dr. Allen Goodwin's use of a steroid injection to the right cervical joint area and Dr. Morgan's use of a steroid injection to the left cervical area six months later. See Tr. 231, 245. Claimant denies as innocuous any secondary gain incentives premised on her unemployed status because most disability claimants are in need of benefits because of their disability-derived unemployment.

The Commissioner, in turn, argues that Dr. Morgan noted "[g]ive-way weakness and questionable effort on the left [of the spine, ribs, pelvis exam]." Tr. 241. Further, claimant reported routine, extreme pain - "10/10" - without going to an emergency room to seek treatment for such extreme pain. Tr. 244. The Commissioner asserts that claimant exaggerated her pain relative to the objective medical evidence, e.g., Dr. Allen Goodwin found claimant's pain was of an unknown etiology. Tr. 232 ("* * * her pain is somewhat difficult to quantitate and specifically and objectively identify."); see also Tr. 165 (Dr. Steven T. Goodwin noting "Objectively good results [from neck fusion] with a lot of pain complaints. Per Dr. Koester this may not have been unexpected.").

The ALJ discredited the claimant's testimony only as it related to the extent of her subjective pain complaints without completely dismissing those complaints as spurious. "If the ALJ finds that claimant's testimony as to the severity of her pain and impairments is unreliable,

9 - OPINION AND ORDER

the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002) (citation omitted).

After accepting that claimant is severely impaired in the upper cervical area, the ALJ looked to the objective medical record, claimant's work history, and any inconsistent self-reporting to determine the extent of pain as it would affect claimant's work capacity. See id. at 958-959 (valid factors to weigh claimant's credibility include "inconsistencies either in claimant's testimony or between her testimony and her conduct, claimant's daily activities, her work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which claimant complains.") (internal quotation and brackets omitted).

Drs. Weller and Allen Goodwin could not correlate claimant's subjective pain complaints to objective medical evidence. Similarly, claimant's subjective pain symptoms did not correlate with her severe cervical impairment. Claimant's behavior belies pain of such intensity that it is completely disabling, e.g., being too busy to attend an appointment with a pain specialist and no medical conclusion that she remain at rest all day. The potential for secondary gain from an insurance payout and SSI benefits given claimant's financial needs is possible and in both instances dependent on her medical condition. Finally, claimant's adult work history shows a capacity for work but little financial gain over a majority of past years for a lack of working consistently. Therefore, I find the ALJ's discussion of the record on this point to reasonably support her decision to discredit the extent of claimant's subjective pain.

B.     Discrediting the patient advocacy aspects of treating physician Dr. Koester's opinion.

Claimant argues that the ALJ had no reason to depart from Dr. Koester's opinion of her functional capacity. The ALJ accepted most of Dr. Koester's opinion as claimant's treating physician but concluded that some of "Dr. Koester's statements are a form of patient advocacy rather than objective evaluation (such as a physical capacities evaluation that he recommended)." Tr. 23. Specifically, the ALJ found that Dr. Koester "fails in large part to articulate specific restrictions with rationale, if [sic] favor of conclusions." Id.

The ALJ refers to letters by Dr. Koester and a concurrent medical note that contain little objective medical evidence except for a January 23, 2003 letter that cites "abnormalities on MRI scans and decreased strength and range of motion" in support of his conclusions on claimant's functional capacity. Tr. 177. However, four days after the date of Dr. Koester's letter, another treating physician, Dr. Allen Goodwin, examined claimant on referral from Dr. Koester. Dr. Goodwin reviewed an August 6, 2002 MRI and reported no abnormalities: "I do not see any evidence of central canal stenosis and do not detect any neural foraminal stenosis at any level. * * * I certainly cannot pick out a specific site [for claimant's subjective pain] evident with MRI or CT of the neck."[3] Tr. 180, 182.

Overall, the ALJ had the benefit of the opinions of three treating physicians: claimant's family doctor, Dr. Koester; physiatrist Dr. Allen Goodwin; and neurosurgeon Dr. Steven K. Goodwin. The surgery by Dr. Steven Goodwin resolved claimant's stenosis. Dr. Allen Goodwin noted in April 2003 that "At this point, I definitely do not feel that she is totally disabled."

---

[3] I find in the record no additional MRI of the claimant during this time period that could confuse the opinions of Drs. Koester and Allen Goodwin.

11 - OPINION AND ORDER

Tr. 232. However, two months later Dr. Koester stated in a letter that "In general I think these limitations would preclude her from gainful employment at this time." Tr. 230. As between the opinions of claimant's treating physicians, I find that the ALJ properly accepted "certain but not all of his [Dr. Koester's] conclusions" in determining claimant's residual functional capacity. Tr. 23.

III.     Step Five - A vocational hypothetical without mobility included as a limitation.

Finally, claimant argues that at step five the ALJ erred by not including a mobility requirement in the hypothetical proposed to the vocational expert. For a vocational hypothetical question to be reliable and have evidentiary value, it must include all of a claimant's functional limitations. See Thomas v. Barnhart, 278 F.3d 947, 956 (9th Cir. 2002); see also Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993). It was Dr. Koester's opinion that claimant could work while sitting "as long as she can get up and move about frequently." Tr. 177. By comparison, the ALJ's RFC determination was that claimant could "sit * * * stand or walk * * * but not continuously; she requires a sit/stand option." Tr. 23.

As discussed above, the ALJ accepted most, but not all, of Dr. Koester's opinion as to claimant's functional capacities within the context of other treating physicians' opinions. Dr. Koester provides no objective medical basis for suggesting that claimant be able to walk around for extended periods of time more than normal. Additionally, the need for mobility beyond a sit/stand option was not emphasized by any other treating physician or in the claimant's testimony when asked by her attorney to comment on her functional needs in a hypothetical 8-hour work day. Tr. 280. Therefore, the ALJ reasonably concluded that the need for claimant to walk around was not a necessary element of claimant's residual functional capacity.

CONCLUSION

Based upon a review of the record, the Commissioner's decision denying claimant disability benefits is supported by substantial evidence on the whole record and is AFFIRMED.

DATED this 22nd day of July, 2005.

/s/ Robert E. Jones
ROBERT E. JONES
U.S. District Judge